No. 22-1243

In the
United States Court of Appeals
for the Sixth Circuit

---

## United States of America,

Plaintiff-Appellee

v.

## Yousef Mohammad Ramadan,

Defendant-Appellant

**On appeal from the District Court of Eastern District
of Michigan, Southern Division**

---

## Reply Brief of Appellant

---

Oral Argument Requested

Gary W. Crim
943 Manhattan Avenue
Dayton, Ohio 45406-5141
(937) 276-5770

Counsel for Defendant-Appellant

## *Table of Contents*

*Table of Contents*.....................................................................*i*

*Table of Authorities*.............................................................. *iii*

*Statement of the Case* ........................................................... *1*

*Summary of Argument*............................................................*2*

*Argument* ...............................................................................*3*

    I.   To pass Constitutional muster under the Second Amendment, the Government must show that a gun regulation is consistent with the Nation's historical tradition of firearm regulation. Can the Government show that forbidding serial number marring, imposing a separate federal offense for possessing a stolen firearm, and prohibiting unregistered sound reducers were forbidden when the Second Amendment was adopted?...................3

       **A.  *The standard of review* ........................................5**

       **B. *The Government cannot meets its burden of establishing a historical tradition of putting serial numbers on firearms.*............................... 8**

       **C. *The Government cannot meet its burden of establishing a historical tradition of prohibiting unregistered sound reducers.*.................................. 11**

       **D. *The Government cannot meet its burden of establishing a historical tradition of imposing a separate offense for possessing stolen firearms*................ 11**

    II.  To use a deposition, the witness must be unavailable. Here, the Government presented evidence collected in 2019 including the witness preference not to impose on others and had a doctor's statement about his limitations for walking and sitting capacity, his diagnosis of spinal stenosis, his difficulties participating in a trial but provided no information about the witness's condition in late 2021. Did the Government establish the witness's unavailability? ................................................ 13

*Conclusion*............................................................................ *14*

*Certificate of Service* ................................................................................. *15*

*Certificate of Compliance* ......................................................................... *16*

*Table of Authorities*

**Page(s)**

**Federal Cases**

*Henderson v. United States,*
    568 U.S. 266 (2013) ................................................................ 6

*Konigsberg v. State Bar of Cal.,*
    366 U.S. 36 (1961) ................................................................. 3

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
    142 S. Ct. 2111 (2022) ................................................... passim

*Puckett v. United States,*
    556 U.S. 129 (2009) ................................................................ 5

*United States v. Al-Maliki,*
    787 F.3d 784 (6th Cir. 2015) .......................................... 5, 6, 7

*United States v. Bradley,*
    No. 2:22-cr-00098, 2023 U.S. Dist. LEXIS 49521 (S.D. W. Va.
    Mar. 23, 2023) ..................................................................... 8

*United States v. Brawner,*
    173 F.3d 966 (6th Cir. 1999) ................................................ 13

*United States v. Fowler,*
    956 F.3d 431 (6th Cir. 2020) ................................................. 6

*United States v. Fowler,*
    956 F.3d at 139-40 ................................................................ 6

*United States v. Holton,*
    No. 3:21-CR-0482-B, 2022 U.S. Dist. LEXIS 200327 (N.D.
    Tex. Nov. 3, 2022) ............................................................. 10

*United States v. Lovo-Serrano,*
    No. 5:21-CR-398-FL-1, 2023 U.S. Dist. LEXIS 22382
    (E.D.N.C. Feb. 9, 2023) ........................................................ 8

*United States v. Olano,*
   507 U.S. 725 (1993) ................................................................ 7

*United States v. Price,*
   No. 2:22-cr-00097, 2022 U.S. Dist. LEXIS 186571 (S.D. W.
   Va. Oct. 12, 2022) ............................................................... 10

*United States v. Reyna,*
   No. 3:21-CR-41 RLM-MGG, 2022 U.S. Dist. LEXIS 225896
   (N.D. Ind. Dec. 15, 2022); .................................................... 10

*United States v. Serrano,*
   No. 21-CR-1590 JLS, 2023 U.S. Dist. LEXIS 38240 (S.D. Cal.
   Jan. 17, 2023) ....................................................................... 9

*United States v. Skouteris,*
   51 F.4th 658 (6th Cir. 2022) ............................................. 5, 6

*United States v. Tita,*
   No. RDB-21-0334, 2022 U.S. Dist. LEXIS 231140 (D. Md.
   Dec. 22, 2022) ..................................................................... 10

*United States* v. *Verdugo-Urquidez,*
   494 U.S. 259 (1990) ............................................................. 4

*United States v. Woodruff,*
   735 F.3d 445 (6th Cir. 2013) ............................................ 5, 6

**Federal Statutes**

26 U.S.C.S. § 5861 ................................................................ 11

18 U.S.C. § 922(k) ......................................................... 8, 9, 10

26 U.S.C. § 5861(d) .............................................................. 11

**Rules**

FED. EVID. R. 804.............................................................. 2, 13

FED. EVID. R. 804(b)............................................................. 13

Fed. R. Crim. R. 52(b) ...................................................................... 6

## Constitutional Provisions

U.S. Const. amend. I ......................................................................... 5

U.S. Const. amend. II ............................................................... passim

U.S. Const., amend IV ...................................................................... 5

U.S. Const. amend. VI ...................................................................... 3

U.S. Const. amend. IX ...................................................................... 5

U.S. Const. amend. X ........................................................................ 5

*Statement of the Case*

The Government opens its Statememt of the Case with the following sentence: "Yousef Ramadan was caught trying to smuggle body armor to the Middle East on a passenger flight to Jordan. (R.312: Trial Vol. I, 4795–98; R.41: Evid Hrg., 446–51)." Gov. Brief, p. 1. First, the term smuggle, smuggled, or smuggling did not come out at the trial. Second, Government agents did not arrest Ramadan at the airport, and the charges in the indictment do not relate to the encounters at the airport. Since August 15-16, 2017, no charge has been filed for the events at the airport; only the results of locating a few items in his storage locker have resulted in charges.

*Summary of Argument*

The Government's argument on the Second Amendment relies on lower court decisions that use only general regulations that affected some aspect of firearms near the time of the adoption of the Second Amendment, such as requiring a manufacturer to mark the products leaving his hand. None of these examples show forbidding serial number marring, imposing a separate federal offense for possessing a stolen firearm, and prohibiting unregistered sound reducers when the Second Amendment was adopted. Such regulations are the product of Twentieth Century choices.

The District Court relied on clearly erroneous factual findings when it made the original decision to allow the use of a deposition rather than require the witness's presence. Ramadan's counsel raised those concerns about the failure to meet the requirements of FED. EVID. R. 804 at the time of the decision to allow the deposition.

*Argument*

I. To pass Constitutional muster under the Second Amendment, the Government must show that a gun regulation is consistent with the Nation's historical tradition of firearm regulation. Can the Government show that forbidding serial number marring, imposing a separate federal offense for possessing a stolen firearm, and prohibiting unregistered sound reducers were forbidden when the Second Amendment was adopted?

In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), the United States Supreme Court explained how courts should analyze attempts to regulate firearms in the context of the Second Amendment. Relying on *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 49 n.10, (1961), *Bruen* rejected the circuit-driven two-step jurisprudence defining the Second Amendment following *District of Columbia v. Heller*, 554 U.S. 570 (2008):

> We reiterate that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command." *Konigsberg*,, 81 S. Ct. 997, 6 L. Ed. 2d 105.

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. at 2129-30.

3

In its brief, p. 10, the Government argues, "that the Supreme Court held that the Second Amendment protects the right of 'law-abiding, responsible citizens' to keep firearms in their homes for self-defense," citing *District of Columbia v. Heller*, 554 U.S. at 635, which is the only reference to the words "law-abiding, responsible citizens" in the majority opinion.

To describe this as a holding is questionable. It is questionable because a couple of paragraphs after the use of the term, the Supreme Court identifies its holding without using the term "law-abiding, responsible citizens":

> In sum, we hold that the District's ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense. Assuming that Heller is not disqualified from the exercise of Second Amendment rights, the District must permit him to register his handgun and must issue him a license to carry it in the home.

*District of Columbia v. Heller*, 554 U.S. at 635.

At the beginning of the majority opinion, Justice Scalia discussed who was protected by the Second Amendment, citing *United States* v. *Verdugo-Urquidez*, 494 U.S. 259, 265, 1 (1990):

> "'[T]he people' seems to have been a term of art employed in select parts of the Constitution.. .. [Its uses] sugges[t] that 'the

people' protected by the Fourth Amendment, and by the First and Second Amendments, and to whom rights and powers are reserved in the Ninth and Tenth Amendments, refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community."

*District of Columbia v. Heller*, 554 U.S. 570, 580, 128 S. Ct. 2783, 2791 (2008). Justice Scalia concluded, "[w]e start therefore with a strong presumption that the Second Amendment right is exercised individually and belongs to all Americans." *District of Columbia v. Heller*, 554 U.S. at 581.

### A. The standard of review

The Government cites several cases asserting that Ramadan does not meet the plain-error standard: *United States v. Al-Maliki*, 787 F.3d 784, 791 (6th Cir. 2015); *Puckett v. United States*, 556 U.S. 129, 135 (2009); *United States v. Skouteris*, 51 F.4th 658, 673 (6th Cir. 2022) (citing *United States v. Woodruff*, 735 F.3d 445, 450 (6th Cir. 2013)).

Some of these cases do not involve any change in law but a failure to raise the legal issue at trial. For example, in *Puckett v. United States*, 556 U.S. at 133, the defendant failed to raise in the District Court that the Government failed to live up to its agreement. Likewise, the

defendant failed to raise the proper jury instruction in United States v. Skouteris, 51 F.4th at 673.

Other cases involve changes in the law due to interpretations of courts.

In *United States v. Woodruff*, this Court had earlier cited *Henderson v. United States*, 568 U.S. 266, 269 (2013), holding that an error is "plain" under FED. R. CRIM. R. 52(b) if it is plain as of the time of appellate review. This Court went on to hold that the Tennessee law was both uncertain and not obvious at the time of its decision and at the time of appellate review, thus precluding the plain-error standard.

In *United States v. Fowler*, 956 F.3d 431, 439 (6th Cir. 2020), this Court relied on *Woodruff.* This Court held that the district court committed plain error by failing to address indigency or a defendant's ability to pay before imposing the assessment; the error was clear based on binding caselaw, and the error affected the defendant's substantial rights and the fairness of his proceedings. *United States v. Fowler*, 956 F.3d at 139-40.

In *United States v. Al-Maliki*, 787 F.3d at 791, the defendant raised for the first time on appeal that the statute was unconstitutional. In

discussing the last three prongs of the test, relying on *United States v. Olano*, 507 U.S. 725 (1993), this Court said:

> Assuming al-Maliki can show an obvious error (a too-generous assumption, we shall see), we "should correct [it]" because it would affect a substantial right (liberty) and would "seriously affect[] the fairness, integrity or public reputation of judicial proceedings" (enforcing an "obvious[ly]" unconstitutional statute). *Olano*, 507 U.S. at 736. So the key questions are whether there was any error (is the statute unconstitutional?), and if so, whether that error was plain (is the statute "obvious[ly] or clear[ly]" unconstitutional?).

*Id.* This Court went on to hold that the statute was constitutional. Here the two-step process suggested by the Government to review Second Amendment does not meet the procedure outlined in *Bruen*.

In this case, as in *Al-Maliki*, the key question is whether the attempt to forbid serial number marring, impose a separate federal offense for possessing a stolen firearm, and prohibit unregistered sound reducers conflicts with the Second Amendment. As in *Al-Maliki*, if this error is shown, then this Court should correct it because it affects a substantial right (liberty) and would seriously affect the fairness, integrity, or public reputation of judicial proceedings enforcing an obviously unconstitutional statute.

7

**B. The Government cannot meets its burden of establishing a historical tradition of putting serial numbers on firearms.**

The Government begins its argument on possessing a firearm with an obliterated serial number by citing a series of decisions of district courts upholding 18 U.S.C. § 922(k).

In *United States v. Bradley*, No. 2:22-cr-00098, 2023 U.S. Dist. LEXIS 49521, at *4 (S.D. W. Va. Mar. 23, 2023), the district court dismissed the challenge to possessing a firearm without a serial number. The district court did not conduct its own analysis but relied on earlier cases it cited.

In *United States v. Lovo-Serrano*, No. 5:21-CR-398-FL-1, 2023 U.S. Dist. LEXIS 22382, at *16 (E.D.N.C. Feb. 9, 2023), the defendant attempted to withdraw his guilty plea. In doing so, he argued that he had received inadequate advice from counsel because there was no *Bruen* challenge to his indictment under 18 U.S.C. § 922(k). Accordingly, the district court addressed the merits, saying:

> Although defendant relies upon an unpublished opinion by the Southern District of West Virginia holding § 922(k) is unconstitutional based on <u>Bruen</u>, the government cites four other district court cases that have held that *Bruen* has no such effect. *United States v. Lovo-Serrano*, No. 5:21-CR-398-FL-1, 2023 U.S. Dist. LEXIS 22382, at *16 (E.D.N.C. Feb. 9, 2023).

8

Without citing any affidavit or testimony, the District Court determined that the defendant received competent counsel and overruled the motion.

In *United States v. Serrano*, No. 21-CR-1590 JLS, 2023 U.S. Dist. LEXIS 38240, at *34 (S.D. Cal. Jan. 17, 2023), under the *Bruen* framework, the Court must first determine whether § 922(k) regulates conduct protected by the Second Amendment. The District Court then noted the Second Amendment protects the right of law-abiding, responsible citizens to possess and carry weapons in case of confrontation and determined that the constitutionality hinges on whether a criminal prohibition on the possession of a firearm with an obliterated serial number violates law-abiding citizen's right to armed self-defense under the Second Amendment. The District Court found that the plain text of the Second Amendment did not cover the conduct regulated by 18 U.S.C. § 922(k). The District Court ultimately concluded that *Bruen* did not abrogate binding Ninth Circuit precedent upholding the constitutionality of 18 U.S.C. § 922(k). *United States v. Serrano*, 2023 U.S. Dist. LEXIS 38240, at *34.

In *United States v. Tita*, No. RDB-21-0334, 2022 U.S. Dist. LEXIS 231140, at *15-16 (D. Md. Dec. 22, 2022), the District Court first rejected the Government's argument that Tita could have raised the arguments before trial—*Bruen* was decided after the initiation of the trial. The District Court held that conduct outlined in 18 U.S.C. § 922(k) is not protected by the Second Amendment because it does not infringe on an individual's right to bear arms "in case of confrontation" or self-defense. The District Court rejected the reasoning in *United States v. Price*, No. 2:22-cr-00097, 2022 U.S. Dist. LEXIS 186571 (S.D. W. Va. Oct. 12, 2022) dismissing a count under 18 U.S.C. § 922(k). *United States v. Tita*, No. 2022 U.S. Dist. LEXIS 231140, at *18. The District Court in *Tita* relied on the general regulation of firearms in the 17th, 18th, and 19th centuries in America. "That there were no serial numbers during the Founding Era is a distinction without a difference."

The District Courts in *United States v. Reyna*, No. 3:21-CR-41 RLM-MGG, 2022 U.S. Dist. LEXIS 225896, at *9 (N.D. Ind. Dec. 15, 2022); and with *United States v. Holton*, No. 3:21-CR-0482-B, 2022 U.S. Dist. LEXIS 200327 (N.D. Tex. Nov. 3, 2022) also rejected *Price.* These district courts view any regulation as justification for 18 U.S.C. § 922(k).

## C. The Government cannot meet its burden of establishing a historical tradition of prohibiting unregistered sound reducers.

The Government now claims that the sound reducer is not a firearm. If this is the case, how can Ramadan be guilty of violating 26 U.S.C. § 5861(d):

> [T]o receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record; or 26 U.S.C.S. § 5861.

The Government wants the sound reducer to be a firearm to pursue Ramadan on this charge but denies him any Second Amendment Rights because the sound reducer is not a firearm.

Furthermore, the Government has not provided evidence of a historical tradition of regulating sound reducers.

## D. The Government cannot meet its burden of establishing a historical tradition of imposing a separate offense for possessing stolen firearms.

While the Government discusses general prohibitions on stolen property, it has not provided evidence of statutes focusing solely on firearms.

While the Government has cited general regulations, it has not provided evidence consistent with the Nation's historical tradition of

firearm regulation, putting serial numbers on firearms, prohibiting un-registered sound reducers, or imposing a separate offense for possessing stolen firearms.

.

II. To use a deposition, the witness must be unavailable. Here, the Government presented evidence collected in 2019 including the witness preference not to impose on others and had a doctor's statement about his limitations for walking and sitting capacity, his diagnosis of spinal stenosis, his difficulties participating in a trial but provided no information about the witness's condition in late 2021. Did the Government establish the witness's unavailability?

The District Court erred at the time of the motion when Ramadan's counsel raised about the Government failing to establish evidence supporting the use of the deposition at trial. Defendant's Response to the Government's Motion to Admit Video Deposition in Lieu of Live Testimony, R. 150, August 27, 2018, PageID 2540. We did note that there was a long period between the hearing and the trial; however, this time lag does not change the facts showing that the absence was the preference of the witness not that he was unavailable; FED. EVID. R. 804(b) sets forth the requirements of unavailability.

The Government sought and received an unconditional ruling by the District Court. The Defendant responded with concerns about the applicability of FED. EVID. R. 804(b). The defendant has preserved the error for appeal. *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999).

Thus, the Government failed to meet the proper showing for using a deposition instead of live testimony at the time of the ruling in November 2018.

*Conclusion*

Thus, this Court should reverse the convictions and dismiss the case.

s/Gary W. Crim

GARY W. CRIM (0020252)
943 Manhattan Avenue
Dayton, Ohio 45406-5141
(937) 276-5770

Attorney for Yousef Mohammad
Ramadan

14

## Certificate of Service

On May 15, 2023, I certify that I electronically filed this Reply Brief of Appellant with the Clerk of Court using the CM/ECT system, thus forwarding the document electronically to Counsel of record.

_s/Gary W. Crim_

*Certificate of Compliance*

I certify that this brief contains 2,386 countable words as determined by Microsoft Word used to generate this document.

*s/Gary W. Crim*