No. 22-1243

In the
United States Court of Appeals
for the Sixth Circuit

---

## United States of America,

Plaintiff-Appellee

v.

## Yousef Mohammad Ramadan,

Defendant-Appellant

**On appeal from the United States District Court for the
Eastern District of Michigan, Southern Division**

---

## Petition for Rehearing En Banc

---

Gary W. Crim
943 Manhattan Avenue
Dayton, Ohio 45406-5141
(937) 276-5770

Counsel for Defendant-Appellant

## Table of Contents

Table of Contents.................................................................i

Fed. R. App. P 35(b) Statement...................................... 1

Facts.................................................................................3

Argument ....................................................................... 5

    **A.  The Panel used a test to determine plain error more stringent than recent United States Supreme Court decisions.**.................................................**5**

    **B.  New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111 (2022), is binding authority.**..................**9**

Conclusion..................................................................... 13

Certificate of Service .................................................... 14

Certificate of Compliance.............................................. 14

Panel Opinion ............................................................ A-1

*Table of Authorities*

**Page(s)**

**Federal Cases**

*Davis v. United States,*
140 S. Ct. 1060 ........................................................................ 1

*District of Columbia v. Heller,*
554 U.S. 570 (2008) .............................................................. 9, 10

*Durbin v. United States,*
143 S. Ct. 1557 (2023) ............................................................ 6

*Greer v. United States,*
141 S. Ct. 2090 (2021) ............................................................ 8

*Henderson v. United States,*
568 U.S. 266 (2013) ............................................................... 12

*Konigsberg v. State Bar of Cal.,*
366 U. S. 36 (1961) .............................................................. 10

*McDonald v. City of Chicago,*
561 U.S. 742 (2010) ................................................................ 9

*Molina-Martinez v. United States,*
578 U.S. 189 (2016) .............................................................. 13

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
142 S. Ct. 2111 (2022) ................................................... *passim*

*Rosales-Mireles v. United States,*
138 S. Ct. 1897 (2018) ...................................................... 1, 6, 7

*Stimmel v. Sessions,*
879 F.3d 198 (6th Cir. 2018) .................................................. 9

*Tyler v. Hillsdale Cty. Sheriff's Dep't,*
837 F.3d 678 (6th Cir. 2016) .................................................. 9

*United States v. Al-Maliki,*
  787 F.3d 784 (6th Cir. 2015)................................................. 1, 5

*United States v. Greeno,*
  679 F.3d 510 (6th Cir. 2012)..................................................... 9

*United States v. Johnson,*
  627 F.3d 578 (6th Cir. 2010)..................................................... 5

*United States v. Olano,*
  507 U.S. 725 (1993)................................................................. 8

*United States v. Skouteris,*
  51 F.4th 658 (6th Cir. 2022) ..................................................... 5

*United States v. Woodruff,*
  735 F.3d 445 (6th Cir. 2013)..................................................... 5

**Federal Statutes**

18 U.S.C. § 922.......................................................................... 12

18 U.S.C. § 922(j) .................................................................. 4, 11

18 U.S.C. § 922(k) ............................................................. 4, 10, 11

26 U.S.C. § 5861(d) .............................................................. 4, 12

**Rules**

FED. R. CRIM. P. 52(b) ............................................................ 6, 8

**Constitutional Provisions**

U.S. CONST., amend. II ...................................................... 2, 9, 12, 13

## FED. R. APP. P 35(b) Statement

Yousef Mohammad Ramadan petitions the Court to rehear this matter en banc. Rehearing en banc is appropriate to "secure or maintain uniformity of the court's decisions" or resolve "a question of exceptional public importance." FED. R. APP. P. 35(a). That standard is satisfied here. The Panel Opinion conflicts with recent United States Supreme Court decisions.

First, the Panel Opinion relied on a stringent interpretation of the plain-error standard in *United States v. Al-Maliki*, 787 F.3d 784 (6th Cir. 2015). Since *Al-Maliki*, the Supreme Court has rejected similar restrictions on the plain-error standard. In *Davis v. United States*, 140 S. Ct. 1060, 1061-02, the Supreme Court rejected a plain-error interpretation allowing a categorical denial of review certain unpreserved factual arguments for plain error. In *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1906 (2018), the Supreme Court rejected a shock-the-conscience standard for plain-error review. And it held that focusing on errors that serve as a powerful indictment against our system of justice or seriously calling into question the district judge's competence or integrity for plain error was inappropriate. *Rosales-Mireles*,

138 S. Ct. at 1907. Instead, the Court said that on the facts before it, an error in the Guideline range, should be returned to the district court for correction. *Id.* at 1909. Correcting the stringent standard the Panel used to analyze plain error requires en banc review.

Second, the Panel Opinion conflicts with *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). In *Bruen,* the Supreme Court rejected the methodology used by the circuit courts in analyzing Second Amendment cases. The Panel Opinion did not use the methodology in *Bruen.* This conflict with Supreme Court decisions requires en banc review.

*FACTS*

This case's origins go back to an incident at the North Terminal of the Detroit Airport, as Ramadan and his family attempted to leave for Palestine on August 15-16, 2017, from the Detroit International Airport. An automated system triggered on an item in one of Ramadan's bags, an export item that needed some documentation. Tr., R. 312, Page ID ## 4793-99. After further involvement with the agents, they removed Ramadan and his family from the plane. Tr., R. 312, Page ID ## 4810-12. The Government never charged Ramadan with any crime related to the items taken at the airport on the night of August 15-16, 2017.

Government agents subjected Ramadan to a wide-ranging inquiry that went beyond the export item without the required paperwork; the agents asked about his firearms and their location. A few days later, FBI Agents executed a search warrant for a storage unit connected to Ramadan. Tr., R. 312, Page ID ## 4880, 4886. FBI Agents seized several firearms. Three items gave rise to the charges: a Jennings j-22 pistol, Exhibit 12; a Ruger MK, Exhibit 13; and a homemade silencer, Exhibit 15. Tr., R. 312, Page ID ## 4888, 4896 4897, 4899.

3

On August 25, Ramadan was arrested and consented to detention pending trial. Consent Order of Detention, etc., R. 9, August 29, 2017, Page ID # 24. Ramadan would spend the next forty-one months in federal custody. Order Setting Conditions of Release, R. 221, January 15, 2021, Page ID # 3650.

Ramadan went to trial on a Superseding Indictment with three counts: Count One charged possession of a firearm with an obliterated serial number for both pistols, 18 U.S.C. § 922(k); Count Two charged possession of a stolen firearm, the Jennings pistol, 18 U.S.C. § 922(j); and Count Three charged possession to receive or possess a firearm not registered to him in the National Firearms Registration and Transfer Record, 26 U.S.C. § 5861(d). The jurors convicted him on all three counts. Verdict Form, September 20, 2021, Page ID #4984.

Ramadan was sentenced on March 14, 2022, and appealed to this Court on March 24, 2022, Page ID #4511. On June 23, 2022, the United States Supreme Court rendered its decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).

*ARGUMENT*

**A.  The Panel used a test to determine plain error more stringent than recent United States Supreme Court decisions.**

The Panel Opinion did not discuss the merits of *Bruen* because Ramadan did not meet the extremely high burden of plain error. Opinion, pp. 3-6.

To support this conclusion, the Panel cites several decisions from this Court articulating a restrictive plain-error standard. In *United States v. Skouteris*, 51 F.4th 658, 673 (6th Cir. 2022), a panel of this Court said, "For one, Skouteris points to no binding case law suggesting that it is unforeseeable that a victim of fraudulent activity will undertake debt in reliance on the fraud." In *United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015), the opinion stated, "As explained in more detail below, because we conclude only that the statute is not obviously unconstitutional, al-Maliki's challenge flunks plain-error review."); *United States v. Woodruff*, 735 F.3d 445, 451 (6th Cir. 2013); In *United States v. Johnson*, 627 F.3d 578, 586 (6th Cir. 2010), the Court said, "holding that the bar for plain error is extremely high and overcome

only in exceptional circumstances when the error is so plain that the trial judge was derelict in countenancing it."

The Supreme Court has not held that the plain error is an extremely high standard or that it is overcome only in exceptional circumstances. Nor has the Supreme Court determined that a statute must be obviously unconstitutional or that there must be binding authority before plain error can be used. The Supreme Court has never required binding authority for a plain-error review.

The Supreme Court used the words "higher bar" in *Durbin v. United States*, 143 S. Ct. 1557, 1564, n.3 (2023), but only to describe an argument raised by the Government. In *Durbin,* the Supreme Court summarily rejected a policy of refusing to review factual findings under a plain-error standard.

The Supreme Court also used the words "higher standard" in *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1907 (2018), but only to describe a standard that it rejected:

> The Fifth Circuit's additional focus on errors that "serve as a powerful indictment against our system of justice, or seriously call into question the competence or integrity of the district judge," 850 F.3d, at 250 (internal quotation marks omitted), similarly alters the Rule 52(b) standard. The Court has never said that errors must amount to a "powerful indictment" of the

system, a phrase which implies by its terms that the only errors worthy of correction are those that rise to the level of grossly serious misconduct. Similarly, the Fifth Circuit's emphasis on the "competence or integrity of the district judge" narrows Olano's instruction that an error should be corrected if it seriously affects "judicial proceedings." In articulating such a high standard, the Fifth Circuit substantially changed *Olano's* fourth prong.

Instead, in recent years, the Supreme Court has condemned the more stringent interpretations of the plain-error standard. A plain-error standard requiring a district court to be derelict is on the same level as those condemned above.

The facts in *Rosales-Mireles* make it clear that the plain-error standard requires circuit courts to address many issues, some rather mundane. Rosales-Mireles pleaded guilty to illegal reentry. In the presentence report, the probation officer mistakenly counted a state misdemeanor conviction twice, resulting in a USSG range of 77 to 96 months. The correctly calculated range was 70 to 87 months. Rosales-Mireles's counsel missed the error and did not object to the Guideline calculation. *Rosales-Mireles*, 138 S. Ct. at 1905. As a dissent noted, the original sentence was at the lower end of both the incorrect and correct ranges. *Rosales-Mireles*, 138 S. Ct. at 1915-16. Nonetheless, the

Supreme Court held that Rosales-Mireles was entitled to resentencing under FED. R. CRIM. P. 52(b). *Id.* at 1911.

The Panel Opinion asserted that there was no binding authority to judge plain error. There is binding authority—*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct.2111 (2022). This decision also sets forth a historical analysis, not balancing various present interests.

This Court reviews the claims under the plain error standard. To establish plain error, a defendant must show that (1) an error occurred in the district court, (2) the error was obvious or clear, and (3) the error affected defendant's substantial rights. If those three requirements are met, an appellate court may grant relief if it concludes that the error had a serious effect on the fairness, integrity or public reputation of judicial proceedings *Greer v. United States*, 141 S. Ct. 2090, 2096-97 (2021); *see also United States v. Olano*, 507 U.S. 725, 735-37 (1993).

Thus, en banc review is needed to comply with the United States Supreme Court's rulings on plain error.

### B.  *New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111 (2022), is binding authority.*

If "the Second Amendment's plain text covers an individual's con-duct," then under *Bruen,* "the Constitution presumptively protects that conduct." *Bruen*, 142 S. Ct. at 2129-30. To rebut the presumption, the government must show that a challenged law "is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2129-30. The test for historical consistency is demanding: a firearm regulation is consistent with American tradition only if similar regula-tions were widespread and commonly accepted during the founding era when the Second Amendment was adopted.

Following *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010), this Court—and other circuits—analyzed Second Amendment challenges with a two-step process. *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012). *Ty-ler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678, 720 (6th Cir. 2016); *Stimmel v. Sessions*, 879 F.3d 198, 206 (6th Cir. 2018).

In *Bruen, t*he United States Supreme Court rejected that approach, instructing courts to consider only "constitutional text and history."

*Bruen*, 142 S. Ct. at 2128-29. The Court disavowed the lower courts'

two-step framework, saying,

> Today, we decline to adopt that two-part approach. In keeping
> with *Heller*, we hold that when the Second Amendment's plain
> text covers an individual's conduct, the Constitution presump-
> tively protects that conduct. To justify its regulation, the govern-
> ment may not simply posit that the regulation promotes an im-
> portant interest. Rather, the government must demonstrate that
> the regulation is consistent with this Nation's historical tradition
> of firearm regulation. Only if a firearm regulation is consistent
> with this Nation's historical tradition may a court conclude that
> the individual's conduct falls outside the Second Amendment's
> "unqualified command." *Konigsberg v. State Bar of Cal.*, 366 U.
> S. 36, 50, n. 10, 81 S. Ct. 997, 6 L. Ed. 2d 105 (1961).

*Bruen*, 142 S. Ct. at 2126.

Under the framework mandated by *Bruen*, the Government cannot

charge Ramadan with possessing a firearm with the manufacturer's se-

rial number removed under 18 U.S.C. § 922(k). Possessing a stolen fire-

arm was never a separate federal crime until 1938, and using an unreg-

istered sound suppresser was not a crime. Because firearm possession

comes within the Second Amendment's "plain text," Ramadan's conduct

is presumptively protected. The Government cannot rebut that pre-

sumption. Manufacturer serial number requirements and removal pro-

hibitions were only adopted in 1968 and were equally unknown to the

founding generation.

10

*Bruen* repeatedly emphasized that the burden falls on the government to show that a statute follows this Nation's historical tradition of firearm regulation. *Bruen,* 142 S. Ct. at 2135. The government bears the burden of affirmatively proving that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms. *Bruen,* 142 S. Ct. at 2127, 2130, 2141 n.11 But again, because the Second Amendment's bare text covers petitioners' public carry, the respondents here shoulder the burden of demonstrating that New York's proper-cause requirement follows the Second Amendment's text and historical scope. Consistent with the principle of party presentation, courts may decide a case based on the historical record compiled by the parties. *Bruen,* 142 S. Ct. at 2130 n.6. Courts need not sift the historical materials for evidence to sustain a statute. That is the government's burden. *Bruen,* 142 S. Ct. at 2149-50. The burden rests with the government to establish the relevant tradition of regulation. *Bruen,* 142 S. Ct. at 2149 n.25.

There was no historical tradition, circa 1791, of gun regulations distinctly similar to the counts Ramadan faced: 18 U.S.C. § 922(k) for obliterated serial numbers; 18 U.S.C. § 922(j), for possessing a stolen

firearm as a separate offense; and for an unregistered firearm, 26 U.S.C. § 5861(d). *Bruen*, 142 S. Ct. at 2130-31. The "Founders themselves could have adopted" laws like § 922 to confront the perceived societal problem posed by violent felons. But they declined to do so, and that inaction indicates various provisions under 18 U.S.C. § 922 are unconstitutional." *Bruen*, 142 S. Ct. at 2131.

An error has occurred. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), establishes the inability of the government to prevail under the Second Amendment.

The language of *Bruen* makes it clear that the government cannot establish that forbidding serial number marring, prohibiting unregistered sound reducers, and imposing a separate federal offense for possessing a stolen firearm were solutions used in 1791. The Supreme Court has held that in direct appeal cases, the reviewing court must determine that the error was plain at the time of review. *Henderson v. United States*, 568 U.S. 266, 277 (2013)

Dismissing the counts would clearly affect Ramadan's substantial rights. He would no longer have a felony conviction. To prevail, a defendant must show a reasonable probability that, but for the error, the

outcome of the proceeding would have been different. *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016). The unfairness of convicting someone of something the Second Amendment protects is readily apparent.

Thus, en banc review is required to apply *Bruen* to this case.

### Conclusion

Thus, this Court should rehear this case en banc bring this Circuit's analysis of plain error into compliance with recent United States Supreme Court decisions and to apply *New York State Rifle & Pistol Ass'n, Inc. v. Brue*n, 142 S. Ct. 2111 (2022).

*s/Gary W. Crim*

GARY W. CRIM (0020252)
943 Manhattan Avenue
Dayton, Ohio 45406-5141
(937) 276-5770
garywcrim@gmail.com

Attorney for Yousef Mohammad
Ramadan

*Certificate of Service*

On October 26, 2023, I certify that I electronically filed this Petition for Rehearing En Banc with the Clerk of Court using the CM/ECT system, thus forwarding the document electronically to counsel of record.

*s/Gary W. Crim*

*Certificate of Compliance*

I certify that this brief contains 2,374 countable words as determined by Microsoft Word used to generate this document.

*s/Gary W. Crim*

NOT RECOMMENDED FOR PUBLICATION
File Name:  23a0439n.06

Case No. 22-1243

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| Plaintiff-Appellee, | ) | Oct 12, 2023 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| YOUSEF MOHAMMAD RAMADAN, | ) | COURT FOR THE EASTERN |
| Defendant-Appellant. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| | ) | O P I N I O N |

Before:  SUTTON, Chief Judge; COLE and THAPAR, Circuit Judges.

COLE, Circuit Judge.  A jury found Yousef Ramadan guilty of possession of a firearm with an obliterated serial number, possession of a stolen firearm, and possession of an unregistered silencer.  Ramadan argues that the three statutes he was convicted under are unconstitutional.  He also argues the district court erred by finding that a deponent was an unavailable witness and allowing the government to present videotaped testimony at trial.  For the following reasons, we affirm Ramadan's convictions.

I.

During the execution of a search warrant on August 23, 2017, FBI agents found firearms belonging to Ramadan in a storage unit in Ann Arbor, Michigan.  Relevant here, the agents recovered a stolen Jennings .22 caliber pistol, a Ruger .22 caliber pistol, and an unregistered homemade silencer.  The serial numbers on both pistols were obliterated.  A grand jury later indicted Ramadan on three counts: possession of a firearm with an obliterated serial number under

A-1

Case No. 22-1243, *United States v. Ramadan*

18 U.S.C. § 922(k), possession of a stolen firearm under 18 U.S.C. § 922(j), and possession of an unregistered silencer under 26 U.S.C. § 5861(d).

The agents determined that the original owner of the stolen Jennings pistol was Phillip Prather, a California resident who was over 90 years old when the FBI recovered the gun. To preserve Prather's testimony for trial, the parties agreed to depose him in San Diego, California. (Stipulation, R. 130, PageID 2347–48.) The parties' listed reason for deposing Prather was that he was "93 years old, and his limited ability to travel qualif[ied] as exceptional circumstances under Rule 15(a)(1)." (*Id.* at PageID 2347.)

When deposed in April 2019, Prather's testimony ultimately connected Ramadan to the theft of the Jennings pistol. The government possessed video evidence "taken from Ramadan's perspective on September 21, 2015, at or near Prather's residence, that include[d] Ramadan's hand removing the Jennings handgun from the back of a Star Carpet van." (Mot. to Admit Test., R. 145, PageID 2457.) And when asked about the handgun, Prather testified that it was stolen and that he noticed it was missing after his home was cleaned by Star Carpet in September 2015. Ramadan worked for Star Carpet at that time.

Prather also testified to his various health issues and inability to travel: he was unable to walk long distances without resting frequently, could not travel by plane or sleep in hotel rooms comfortably, was still on medication for two previous heart attacks, and was planning to have back surgery in the near future.

The government moved to admit a videotape of the deposition in lieu of live testimony at the upcoming trial, citing to the health concerns Prather raised in the deposition, and requesting that the district court find that he was an unavailable witness within the meaning of Federal Rule of Evidence 804(a)(4). The government attached a letter from Prather's doctor stating it would be

**A-2**

Case No. 22-1243, *United States v. Ramadan*

difficult for Prather to participate in a trial because of his spinal stenosis, inability to sit in one place, and limited walking capacity. Ramadan objected, arguing that Prather's physical condition did not limit his ability to travel and did not meet the unavailability standard. The district court disagreed. It granted the motion in November 2019, concluding that it was "not possible for [Prather] to come" because of his age and health concerns. (Mot. Hr'g Tr., R. 309, PageID 4643-44.)

Ramadan's trial did not commence until September 2021, two years later, because of delays resulting from the COVID-19 pandemic. At trial, Ramadan did not object to the district court's admission of the video testimony or ask the court to reconsider its November 2019 unavailability determination. A jury found Ramadan guilty of all three offenses. He brought this appeal.

## II.

### A.

On appeal, Ramadan argues for the first time that the statutes governing his three convictions violate his Second Amendment rights. Since Ramadan did not make this argument before the district court, we review for plain error. *United States v. Skouteris*, 51 F.4th 658, 673 (6th Cir. 2022) (citing *United States v. Johnson*, 627 F.3d 578, 585 (6th Cir. 2010)).

#### 1.

As a preliminary matter, the constitutional challenge that Ramadan raises is predicated on the test recently enumerated by the Supreme Court in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). Before *Bruen*, this court employed a two-part test to resolve Second Amendment challenges to regulations. *See United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012), *abrogated by Bruen*, 142 S. Ct. at 2126−27; *Oakland Tactical Supply, LLC v. Howell Twp., Mich.*, No. 21-1244, 2022 WL 3137711, at *2 (6th Cir. 2022). The first step of the pre-*Bruen* test

- 3 -

**A-3**

Case No. 22-1243, *United States v. Ramadan*

required the government to offer evidence establishing that the challenged law did not regulate activity protected by the Second Amendment's historical scope. *Greeno*, 679 F.3d at 518. In step two, "if the historical evidence [was] inconclusive or suggest[ed] that the regulated activity [wa]s *not* categorically unprotected," then courts conducted an inquiry "into the strength of the government's justification" under "the appropriate level of scrutiny." *Id.* (quotation omitted).

The *Bruen* Court rejected this test, holding that "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." 142 S. Ct. at 2129−30. If the regulation infringes upon protected conduct, then the government must justify it by pointing to evidence showing consistency with the "Nation's historical tradition of firearm regulation." *Id.* at 2130. So, post-*Bruen*, courts ask (1) whether the Second Amendment's plain text protects the conduct and, if so, (2) whether the government can justify the law by demonstrating consistency with the Nation's history of firearm regulation. *Id.* at 2129−30.

But because we review this case for plain error, we must determine only whether the challenged statutes are "*obviously* unconstitutional." *United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015) (emphasis in original). Therefore, we need not decide today whether they comply with *Bruen*'s mandate.

## 2.

As both parties acknowledge, we review for plain error because Ramadan raises this argument on appeal for the first time. The plain error threshold is "extremely high" and is overcome only in "exceptional circumstances." *Johnson*, 627 F.3d at 586 (quotation omitted). Ramadan must show "(1) error[,] (2) that was obvious or clear, (3) that affected [his] substantial rights[,] and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.* at 585−86 (quoting *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008)

# A-4

Case No. 22-1243, *United States v. Ramadan*

(en banc) (internal marks omitted).  When addressing a constitutional challenge to a statute under plain-error review, we examine whether the statute is unconstitutional, and ultimately whether the statute is "obviously or clearly unconstitutional."  *See Al-Maliki*, 787 F.3d at 791, 794 (quotation omitted).

Ramadan's challenges do not clear this "high bar."  *Skouteris*, 51 F.4th at 673.  Under our precedent, an error is plain only where, at a minimum, the answer to the constitutional question "is clear under current law."  *Al-Maliki*, 787 F.3d at 791, 794 (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)).  Plain-error review is not satisfied when the state of the law regarding the question is uncertain.  *See United States v. Woodruff*, 735 F.3d 445, 451 (6th Cir. 2013).  And a circuit split also bars a finding of plain error because the split is "good evidence that the issue is subject to reasonable dispute."  *Al-Maliki*, 787 F.3d at 794 (quotation omitted).

Here, Ramadan points to no "binding case law that answers the question," let alone case law suggesting that the statutes are plainly unconstitutional.  *Id.* (citing *Woodruff*, 735 F.3d at 450). His argument centers around the fact that "serial marring," "[possessing] unregistered sound reducers," and "possessing a stolen firearm" were not criminalized when the Second Amendment was adopted.  (Appellant Br. 18.)  Yet assuming Ramadan's conduct is covered by the plain text of the Second Amendment, Ramadan's historical evidence is not enough to answer *Bruen*'s historical inquiry to such a degree that the statutes are plainly unconstitutional.  That's especially true here because neither our court nor the Supreme Court has determined the constitutionality of 18 U.S.C. § 922(k), 18 U.S.C. § 922(j), and 26 U.S.C. § 5861(d) vis-à-vis the Second Amendment.

Although one district court recently found that § 922(k) is unconstitutional under *Bruen*, that specific issue is, at most, "subject to reasonable dispute."  *Al-Maliki*, 787 F.3d at 794; 142 S. Ct. at 2129−30 (quotation omitted).  In actuality, the weight of persuasive authority suggests that

Case No. 22-1243, *United States v. Ramadan*

§ 922(k) is constitutional.  (*See* Appellee Br. 14−15.) (collecting cases finding the regulation of possessing firearms with obliterated serial numbers constitutional under *Bruen*). *But see United States v. Price*, 635 F. Supp. 3d 455, 463 (S.D. W. Va. 2022) (order) (finding § 922(k) is unconstitutional).

Accordingly, there is no binding case law or "good evidence" before this court showing that the statutes are clearly unconstitutional under current law.  *See Al-Maliki*, 787 F.3d at 791, 794.  Because we are unable to say that the challenged statutes are plainly or obviously unconstitutional, we find no plain error in Ramadan's convictions.

B.

Ramadan also challenges the district court's ruling that Prather was an unavailable witness, which allowed the government to present a videotape recording of Prather's deposition in lieu of live testimony at trial.  Since the district court was correct, we reject this argument.

At the outset, the parties dispute whether Ramadan preserved his challenge.  Ramadan objected to the government's initial motion to admit Prather's testimony in 2019, but he did not object or ask the district court to revisit its ruling when the video was admitted at trial two years later.  The government therefore contends that Ramadan's challenge to the unavailability ruling should also be reviewed under plain error.  The outcome is the same under either test, so we review Ramadan's challenge under the less demanding abuse-of-discretion standard.  *See United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019) ("Evidentiary rulings are reviewed under the abuse-of-discretion standard."); *United States v. Porter*, 886 F.3d 562, 567 (6th Cir. 2018) ("We review for abuse of discretion the admission of deposition testimony at trial in place of a live witness.")

Case No. 22-1243, *United States v. Ramadan*

Under the abuse-of-discretion standard, we ask "whether the district court (1) misunderstood the law . . ., (2) relied on clearly erroneous factual findings, or (3) made a clear judgment error." *United States v. Chavez*, 951 F.3d 349, 358 (6th Cir. 2020). Ramadan's challenge to the district court's ruling focuses on the first prong. He argues that the district court misunderstood the law because Rule 804(a)(4) "requires the government show a witness to be unavailable, not that the witness is inconvenienced." (Appellant Br. 36.) The district court was not wrong, however, because Prather's physical condition did in fact meet the unavailability standard.

When a party claims that a witness is unavailable due to health concerns, the trial court examines the duration and severity of the witness's physical infirmities and illnesses to determine whether the requisite finding of necessity is met. *See Porter*, 886 F.3d at 567. The admission of deposition testimony at trial is a "case specific" determination, *id.*, and is a matter "left to the discretion of the trial judge," *United States v. Campbell*, 845 F.2d 1374, 1378 (6th Cir. 1988). Further, "it is well established that the infirmity of an elderly witness which prevents [them] from traveling is an 'exceptional circumstance' [that] justifies the use of deposition testimony at trial." *Campbell*, 845 F.2d at 1377-78 (quotations omitted).

Prather's physical condition met the unavailability standard. Cumulatively, deposition testimony, the doctor's note, and counsel for the government sufficiently articulated the nature and severity of Prather's health problems to the district court. *See Porter*, 886 F.3d at 568. At the time of the evidentiary ruling, Prather was 93 years old, struggled to walk without needing rest, could not travel by plane, and was on medication due to his previous heart attacks. His doctor also concluded that Prather's spinal stenosis would make it difficult for him to participate in the trial because of his limited mobility and inability to sit in one place.

- 7 -

**A-7**

Case No. 22-1243, *United States v. Ramadan*

Given Prather's advanced age and health conditions, traveling across the country by plane to testify would be more than an inconvenience. *See United States v. Mallory*, 902 F.3d 584, 590 (6th Cir. 2018). The district court gave proper weight to Prather's characteristics when finding that it would "essentially [be] physically impossible and [] dangerous to his health to travel here and appear for what really should be fairly straightforward testimony." (Mot. Hr'g Tr., R. 309, PageID 4643-44.) Thus, we cannot say the district court misunderstood Rule 804(a)(4).

Given the above, the district court did not abuse its discretion in finding that Prather was an unavailable witness and allowing the government to present videotaped testimony at trial.

III.

For the foregoing reasons, we affirm.

A-8